Filed 7/29/25  Piquado v. The RAND Corporation CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| TEPRING PIQUADO,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>THE RAND CORPORATION,<br><br>     Defendant and Respondent. | B336062<br><br>(Los Angeles County<br> Super. Ct. No. 22STCV08371) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Reversed in part and Affirmed in part.

Kowal Law Group, Teddy T. Davis and Timothy M. Kowal for Plaintiff and Appellant.

CDF Labor Law, Desiree J. Ho, Taylor Wendland and Kent J. Sprinkle for Defendant and Respondent.

## INTRODUCTION

Plaintiff sued her former employer for discrimination and retaliation, alleging she was fired because of her advocacy for diversity initiatives at the company. The trial court granted the employer's motion for summary adjudication on nine of plaintiff's causes of action as well as her claim for punitive damages. The trial court determined the employer presented evidence that it had non-discriminatory reasons for terminating plaintiff's employment, which she failed to rebut. Plaintiff appeals, arguing a triable issue of material fact exists as to whether the employer's stated reasons for termination were pretextual. We conclude there are triable issues of material fact regarding whether all of the material contributors to the employer's decision to terminate plaintiff acted with non-discriminatory reasons and whether plaintiff suffered an adverse employment action. We therefore reverse the trial court's order on eight of plaintiff's causes of action and her claim for punitive damages.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     *The Parties*

Defendant and respondent, The RAND Corporation (RAND), is a nonpartisan, nonprofit research institution that is hired by government agencies, colleges and universities, and other private-sector firms to provide analysis on a broad array of issues, including energy, education, health care, justice, and national security. RAND strives to maintain objectivity and independence in its research and analyses. As a result, RAND requires that its researchers and scientists remain neutral and nonpartisan in their outside professional activities.

Plaintiff and appellant Tepring Piquado (Piquado) began working as an associate physical scientist at RAND in 2014. In 2016, Piquado was

promoted to a full researcher position. She was also appointed as the co-chair of RAND's Diversity Committee. Her term as co-chair expired in 2018. On June 20, 2020, Piquado was promoted to a senior physical scientist position.

II.     *Piquado Begins Working at California Issues Forum*

At Piquado's request, she transitioned from a full-time employee to a part-time position at RAND in January 2019. That same month, Piquado was offered an employment opportunity with the California Issues Forum (CIF). Piquado accepted the offer and signed an employment contract with CIF making her the Chief Policy Director. CIF required that Piquado register with the state of California as a lobbyist, which she did.

There is no dispute that Piquado was required to get her outside work with CIF approved by RAND's Office of the General Counsel, as well as by her direct supervisor. On January 31, 2019, Piquado sent an email to Dawn Ross (Ross), an associate general counsel in RAND's Office of the General Counsel. Piquado informed Ross that she "accepted an outside professional activity with California Issues Forum." Piquado described CIF as "a non-profit organized to promote social welfare by educating the public regarding and providing a forum to discuss topical issues of community interest in California."

Ross responded on February 1, 2019, noting that she was traveling but would "try to move this along during [her] absence." Ross told Piquado that CIF "Sounds like a great opportunity" and asked several questions about CIF and Piquado's prospective work there. For example, Ross asked Piquado if CIF conducted any lobbying activities. Piquado responded, stating, "By the legal definition and according to the FPPC, providing information directly to elected officials for compensation exceeding $2000 a month is lobbying. But

CIF is a non-profit exactly like RAND in that it's nonpartisan and doesn't advocate for any party's platform." The parties dispute whether Ross ever officially approved Piquado's work at CIF.

Piquado separately emailed her direct supervisor, Chris Pernin (Pernin), asking him to approve her work at CIF. On February 5, 2019, Pernin responded to Piquado's email, stating, "Sounds wonderful. I approve."

Believing that RAND had approved her work at CIF, Piquado began working at CIF in February 2019 while continuing to work part-time at RAND.

III.   *Piquado's Involvement in DEI Activities at RAND*

On June 5, 2020, in the wake of national outrage over the death of George Floyd, RAND's CEO, Michael Rich (Rich), sent an email to RAND's employees concerning systemic inequality and racism. In response, on June 8, 2020, Piquado and nine other RAND employees co-authored a letter addressed to Rich with a proposal to change the culture at RAND and improve the lives of Black researchers at the company. Specifically, the letter and accompanying email requested the opportunity to discuss proposals with Rich, including the establishment of a Center for the Study of Racial Justice, as well as committing to attaining certain benchmarks in RAND's allotment of research funds to Black researchers and the demographics of its workforce. Another letter was sent to Rich on June 11, 2020, from a larger group of RAND employees in support of the initiatives outlined in the June 8 letter.

On June 11, 2020, RAND held a meeting with Rich and approximately ten RAND employees, including Piquado, to discuss the proposals outlined in the two letters. According to Piquado, the majority of the meeting was comprised of Rich listening to the various attendees discuss the suggestions

4

in the June 8 letter. Piquado believed Rich "was open to hearing out our grievances."

Around this time, RAND began restructuring its diversity, equity, and inclusion (DEI) policies and programs. Sometime between June 11 and June 26, 2020, Piquado met with RAND's Director of Talent Development and Planning, Heon Hahm (Hahm), to discuss Piquado's continued advocacy for changes in RAND's DEI programs. According to Piquado, Hahm told her to stop organizing and advocating for change in RAND's diversity efforts and to let RAND's official team handle the overhaul of those programs. Hahm also told Piquado that some unidentified people at RAND considered her an "agitator" for her continued advocacy for changes to RAND's diversity policies. Piquado refused to comply with Hahm's instruction to "stand down" and let RAND's official team decide how to handle DEI programs at RAND.

On June 26, 2020, RAND sent an announcement to all employees soliciting funding proposals for 2021. Specifically, RAND sought proposals "that address racial and ethnic inequities in our society of all types." In August 2020, RAND announced the launch of the RAND Center to Advance Racial Equity Policy.

Piquado remained critical of RAND's changes to its diversity initiatives, particularly with RAND's plan to replace its Diversity Forum with a series of employee resource groups (ERGs) funded by RAND. According to Piquado, "the ERGs have rubbed many (all that have spoken) the wrong way." Piquado also criticized the method by which RAND selected the first round of ERGs to fund. In particular, Piquado felt it was unwise to let RAND's internal Staff Advisory group select the initial slate of ERGs without direct input from employees.

5

On November 16, 2020, Piquado sent an email criticizing the first slate of ERGs selected by RAND. Piquado also expressed frustration that her proposal for an umbrella ERG was not selected in the first slate of ERGs, saying her proposed group would nonetheless "persist without an ERG designation."

IV.    *RAND Re-evaluates Piquado's Work at CIF*

While these discussions regarding RAND's diversity programs were going on, Piquado continued to work at CIF. On November 20, 2020, Piquado sent an email from her CIF email address to RAND employees. The email had the subject line "Pitch a bill idea to help Californians" and relayed an announcement from the Los Angeles County Delegation soliciting legislative proposals to its members. Approximately two hours later, Piquado sent another email from her CIF address providing additional information for submitting legislative pitches for the event. According to RAND, the emails caught the attention of RAND's management, who were concerned about Piquado using an outside organization's email address to solicit legislative proposals from RAND employees using RAND's internal email distribution groups.

On January 26, 2021, Pernin emailed Piquado to discuss her November 2020 emails. Pernin informed Piquado that her emails violated RAND's guidelines for internal solicitation. He also told Piquado that the use of her CIF email account "raised questions related to [a] potential conflict of interest." He told Piquado that while they had located prior emails regarding her work at CIF, "it does not appear that the approval process was fully completed." Pernin told Piquado that Daniel Abramson (Abramson) from

RAND's Office of the General Counsel would be in touch with her to finalize the approval process.

Piquado responded to Pernin, stating, "I understand and apologize for the misuse of RAND resources." She also thanked Pernin for letting her know that her work with CIF "has not been fully processed in the last two years" and stated she "had been acting according to [the] approval that you and [Ross] provided before beginning that role in February of 2019." She closed by saying she would follow up with Abramson regarding the CIF approval.

Over the next several months, Abramson and Piquado would exchange numerous emails regarding CIF and whether Piquado's work there presented a conflict of interest with her work at RAND. In the course of these discussions with Abramson, Piquado admitted she was a registered lobbyist and "partipate[d] in lobbying activities . . . on behalf of [CIF]." However, she claimed she was not legally required to register as a lobbyist because she did not "currently meet the threshold of spending 30% of my time, as defined under California law," to trigger the registration requirement. Instead, Piquado claimed she only registered as a lobbyist "to be on the safe side." Abramson also asked Piquado several questions about the sources of CIF's funding and whether the organization was partisan or non-partisan. In response to Abramson's questions, Piquado indicated that she did not know who funded CIF and did not know the "agenda of the organizations who are funding" CIF.

In April 2021, Piquado filed a formal complaint with RAND's Human Resources Service Manager, Lara Barlow-Paules (Barlow-Paules), stating that her employment at CIF was "being unfairly investigated and that my minoritized race and role in organizing Black researchers play[] a motivating

7

factor." Piquado explained that she "perceive[d] possible racial discrimination due to the fact that this investigation is coming soon after I was told that 'some see me as an agitator' for my leadership role in writing a letter to [RAND's CEO] about racial injustice perceived by me and my fellow Black colleagues, and subsequently my role in sharing my frustration and that of some of my colleagues about the rollout of the Employee Resource Groups." Barlow-Paules investigated Piquado's complaint and met with her several times over the next few months to discuss her complaint.

On June 4, 2021, Barlow-Paules sent Piquado a memorandum summarizing the investigation into Piquado's complaint. In it, Barlow-Paules stated that it was the Office of the General Counsel's standard practice to conduct a conflict review when unapproved outside work is discovered. Barlow-Paules also noted that Abramson was responsible for reviewing outside professional activities, and he was the one who determined that a review of her work with CIF was necessary. Barlow-Paules ultimately found no evidence that Abramson's review of Piquado's work at CIF was in any way related to her race or her involvement in DEI-related matters at RAND.

That same day, Abramson notified Piquado that RAND was unable to approve her request to continue working at CIF while employed by RAND. Abramson identified two key reasons why RAND could not approve her outside work with CIF. First, he said "working as a registered lobbyist is fundamentally incompatible with [RAND]'s mission to provide unbiased, evidence-based policy recommendation[s]." Second, he said that "Without knowing the funders of CIF and the individuals controlling CIF, we are unable to fully evaluate whether working for CIF in any capacity is appropriate for a RAND researcher." Abramson requested that Piquado

8

terminate her relationship with CIF, adding that if she was unwilling to do so, she would not be able to continue at RAND. He closed by telling Piquado that she was "a valued part of the RAND community, and we hope that you choose RAND."

Piquado responded to Abramson and contested his conclusion that CIF presented a conflict of interest. This triggered more back-and-forth discussion with Abramson. Abramson expressed that CIF's ties to private companies and the Democratic party suggested it was not a non-partisan organization. Piquado remained steadfast that her work at CIF did not pose a conflict of interest with her work at RAND.

RAND ultimately gave Piquado three options: (1) stop working with CIF and remain with RAND on a part-time or full-time basis, (2) resign from RAND but continue "non-research activities" with the Pardee RAND Graduate School on a contract basis, or (3) resign from RAND. RAND's general counsel advised that if Piquado did not notify RAND of her decision by July 6, RAND would "have no choice but to initiate the process to separate you from employment for policy non-compliance."

V. *Piquado's Termination*

Piquado refused to resign from CIF or RAND. On July 6, 2021, RAND notified Piquado that she would be terminated from RAND effective July 9, 2021. When Piquado asked why she was being terminated, she was told, "We will list the category of termination as involuntary and the reason as policy non-compliance." After her termination, Piquado continued to work with RAND as an independent contractor on projects that she previously worked on. According to Piquado, RAND terminated her last contract in September 2021.

9

VI.    *Lawsuit*

Piquado filed suit against RAND, with her operative first amended complaint asserting 13 causes of action against her former employer. All of her causes of action are based on the same set of allegations. However, they generally fall into one of two categories. The first through ninth causes of action allege that Piquado's termination from RAND was the result of racial discrimination and retaliation for her involvement in DEI advocacy at RAND. The tenth through thirteenth causes of action stem from wage claims connected to Piquado's change from full-time to part-time employment in 2019.

A.    *RAND's Motion for Summary Adjudication*

On March 24, 2023, RAND filed a motion for summary adjudication. As relevant to this appeal, RAND's motion sought summary adjudication of Piquado's first through ninth causes of action[1] and her claim for punitive damages.[2] RAND argued Piquado was terminated because her work at CIF presented an actual or perceived conflict of interest with her work at RAND, and Piquado was unwilling to relinquish her status as a registered lobbyist or

---

[1]    These causes of action are racial discrimination in violation of the Fair Employment and Housing Act (FEHA), failure to prevent discrimination, retaliation under FEHA, declaratory and injunctive relief under FEHA, retaliation under California's whistleblower statute, declaratory and injunctive relief under California's whistleblower statute, wrongful termination in violation of public policy, intentional infliction of emotional distress, and negligent infliction of emotional distress.

[2]    RAND also moved for summary adjudication on Piquado's eleventh and twelfth causes of action. However, as RAND's motion was denied as to those two causes of action, and no party has appealed that aspect of the trial court's ruling, we will not discuss those causes of action further.

10

her employment at CIF. RAND argued this was a legitimate, non-discriminatory basis for termination under RAND's conflict of interest policy and was unrelated to Piquado's race or DEI advocacy at RAND. RAND's motion was supported by evidence largely consisting of declarations from its employees, email correspondence, and excerpts from Piquado's deposition.

Piquado opposed RAND's motion, arguing that a triable issue of material fact remained as to whether RAND's stated reasons for termination were pretextual. Specifically, Piquado argued she had followed RAND's conflict of interest policy and had her work at CIF approved by Pernin and Rowe in 2019. Piquado argued RAND's decision to re-evaluate her work with CIF, after Hahm had labeled her an "agitator" for her advocacy regarding RAND's restructuring of its diversity programs, was itself evidence of pretext.

On June 9, 2023, the trial court granted RAND's motion for summary adjudication on Piquado's first through ninth causes of action, as well as her claim for punitive damages. The court determined that Piquado failed to carry her burden of showing that RAND's proffered "legitimate, non-discriminatory reason for the employment action was merely pretext." The court determined Hahm's statement that some people saw Piquado as an "agitator" was "insufficient to demonstrate pretext." The court noted this statement was made more than one year before her termination, and in the interim, she continued to receive promotions and pay increases. The court also noted there was no evidence tying this "agitator" statement to any employment decision made by RAND, as no one involved in the investigation into CIF or the resulting termination decision referred to Piquado "in any way as an agitator."

The court concluded that Piquado did not demonstrate a triable issue of fact as to pretext and granted summary adjudication to RAND on Piquado's

11

first cause of action for racial discrimination in violation of FEHA. The trial court then relied on this same determination to grant RAND summary adjudication on Piquado's second through seventh causes of action. The trial court also granted summary adjudication to RAND on Piquado's eighth cause of action for intentional infliction of emotional distress, noting that it was premised on the assertion that "the decision to terminate Plaintiff was impermissibly motivated by race." As the court previously found that Piquado's "discrimination claim fails," it determined there was "insufficient evidence to show that [RAND]'s actions were extreme or outrageous."

Turning to Piquado's ninth cause of action for negligent infliction of emotional distress, the court noted Piquado "[did] not address her negligent infliction of emotional distress claim in [her] opposition" to RAND's motion. In the absence of any opposition from Piquado, the court determined, "There is insufficient evidence to show a triable issue of fact as to whether Defendant engaged in negligent infliction of emotional distress."

The court also granted summary adjudication to RAND on Piquado's claim for punitive damages, holding that because Piquado's claims for discrimination and retaliation failed, "There is no evidence to support punitive damages."

B.      *Appeal*

Following the ruling on RAND's summary adjudication motion, the parties settled Piquado's remaining wage-and-hour claims. On December 7, 2023, the trial court dismissed the action under California Rules of Court, rule 3.1385. Piquado timely appealed the trial court's grant of summary adjudication to RAND.

12

## DISCUSSION

I.    *Standard of Review*

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense.  (*Id.*, subd. (p)(2).)  If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact.  (*Ibid.*)"  (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636–637.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party."  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  We also consider "all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports."  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  "'[W]e review the trial court's rulings and not its reasoning.'"  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336, quoting *People v. Mason* (1991) 52 Cal.3d 909, 944.)

II.     *Pretext*

"Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.  [Citation.]  In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination." (*Guz v. Bechtel Nat., Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).)  The test, established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, "places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled.  [Citations.]  While the plaintiff's prima facie burden is 'not onerous' [citation], he must at least show "'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion.'"'" (*Guz, supra*, 24 Cal.4th at pp. 354–355.)

"If . . . the plaintiff establishes a prima facie case, a presumption of discrimination arises." (*Guz, supra*, 24 Cal.4th at p. 355.)  The burden then "shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise . . . a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason." (*Id.* at pp. 355–356.)  "If the employer sustains this burden, the presumption of discrimination disappears.  [Citations.]  The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive.  [Citations.]" (*Id.* at p. 356.)

14

"A defendant employer's motion for summary judgment slightly modifies the order of these showings. If, as here, the motion for summary judgment relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination. [Citations.]" (*Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097–1098.) "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual . . . .'" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861.)

"In responding to the employer's showing of a legitimate reason for the complained-of action, the plaintiff cannot '"simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [. . . asserted] non-[retaliatory] reasons.'"'"'" (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388–389 (*McRae*).) Ultimately, "an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz, supra*, 24 Cal.4th at p. 361.)

15

III.  *RAND Failed to Meet Its Initial Burden in Moving for Summary Adjudication on Piquado's First through Eighth Causes of Action*

Piquado claims that RAND's failure to identify the individual who brought Piquado's November 2020 emails to Abramson's attention is fatal to its motion for summary adjudication.  Piquado's argument is premised on *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95 (*Reeves*).  *Reeves* involved a retaliation claim where a grocery store clerk alleged he was fired because he had previously complained several times to mid-level managers about instances of sexual harassment at the store.  (*Reeves*, *supra*, 121 Cal.App.4th at pp. 100, 104–105.)  The defendant employer moved for summary judgment, arguing the plaintiff was fired for his involvement in an incident in which he allegedly pushed a manager and engaged in other misconduct.  (*Id*. at p. 105.)  The employer put forth evidence showing the district manager responsible for deciding to terminate the plaintiff was not aware that the plaintiff had previously complained about sexual harassment.  (*Ibid*.)  The trial court granted the employer's motion, finding the plaintiff had failed to rebut the employer's evidence and show that  a triable issue of material fact remained as to whether the  employer's proffered reason for termination was pretextual.  (*Ibid*.)

The appellate court reversed, noting that to carry its initial burden on summary judgment, the defendant employer had to "make a threshold showing that *all* material contributors to the decision acted for legitimate nondiscriminatory motives."  (*Reeves*, *supra*, 121 Cal.App.4th at p. 113.)  The court defined "material contributors" as individuals "whose actions were a but-for cause of the challenged employment action."  (*Ibid*.)  The court noted that the managers who ignored the plaintiff's sexual harassment complaints were the ones who investigated the pushing incident and recommended the

plaintiff's termination to the district manager. (*Id.* at pp. 103–105.) While the employer had presented evidence that the district manager who fired the plaintiff had articulated legitimate nondiscriminatory reasons for the decision, a triable issue of material fact remained as to whether the managers who ignored the sexual harassment complaints harbored a retaliatory motive that could be imputed to the employer. (*Id.* at pp. 112–113.)

Applying *Reeves* to Piquado's case leads to the same result. There is no dispute that RAND's decision to terminate Piquado stemmed from Abramson's conclusion that her work at CIF constituted an unacceptable conflict with her work at RAND. In a declaration attached to RAND's motion for summary adjudication, Abramson stated that he decided to re-investigate Piquado's work with CIF when he "became aware of the concerns related to Plaintiff's November 20, 2020 CIF email." Accordingly, Abramson's receipt of Piquado's November 2020 emails was a but-for cause of RAND's ultimate decision to terminate Piquado. In other words, under *Reeves*, the individual who made Abramson aware of Piquado's emails was a material contributor to Piquado's termination. Piquado contends that, under *Reeves*, RAND failed to carry its burden in moving for summary adjudication because it failed to present evidence that her emails were forwarded to Abramson for legitimate, nondiscriminatory reasons. We agree.

On appeal, RAND does not argue that *Reeves* was wrongly decided or is distinguishable from the facts of Piquado's case. Nor does RAND dispute that the holding of *Reeves* applies with equal force to Piquado's claims, whether arising from FEHA or Labor Code section 1102.5. Indeed, RAND does not address or acknowledge *Reeves* at all in its appellate brief. Instead, RAND argues in conclusory fashion that "The circumstances giving rise to

17

RAND's investigation of [Piquado's] CIF work, . . . when RAND became aware of the solicitation email after it was sent, and what about the solicitation email prompted RAND to investigate, are all immaterial." This assertion runs contrary to the holding of *Reeves* and RAND does not develop this point with analysis, argument, or authority. "[W]hen counsel asserts a point but fails to support it with reasoned argument and citations to authority, the court may deem it to be forfeited, and pass it without consideration." (*AmeriGas Propane, L.P. v. Landstar Ranger, Inc.* (2010) 184 Cal.App.4th 981, 1001, fn. 4, citing *People v. Stanley* (1995) 10 Cal.4th 764, 793.) We conclude RAND has forfeited any claim that *Reeves* is inapplicable by failing to support its claim with reasoned argument or authority.

By failing to address *Reeves*, RAND has impliedly conceded that it is not entitled to summary adjudication unless it can make a threshold showing that all material contributors acted for legitimate, nondiscriminatory reasons. (*People v. Bouzas* (1991) 53 Cal.3d 467, 480 [argument is conceded by failure to address it on appeal] (*Bouzas*); *Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 529 [party "effectively concedes" issue by failing to address it in brief] (*Westside*); *Glendale Redevelopment Agency v. Parks* (1993) 18 Cal.App.4th 1409, 1424 [parties "impliedly concede" an issue by failing to address it].)

RAND's motion for summary adjudication did not include any evidence showing how Abramson became aware of Piquado's November 2020 emails. There is no evidence in the record that Abramson became aware of the emails for legitimate, nondiscriminatory reasons. Instead, RAND's only argument is that it satisfied its burden in moving for summary adjudication because its motion "was transparent about who raised concerns with the November 2020 emails, and what prompted the February 2021 investigation. The MSA

18

explains that Appellant's emails alerted RAND management that there may be an issue with her CIF employment, and the Director of Congressional Relations, Jayme Fuglesten, specifically 'responded to the email chain expressing her concern about a potential conflict of interest' . . . , a fact which Appellant acknowledged during her deposition."

But the fact that a RAND employee named Jayme Fuglesten (Fuglesten) responded to Piquado's CIF email does not establish how Abramson himself "became aware" of that email in January 2021. Nothing in the record suggests or implies that Fuglesten was the one who notified Abramson of Piquado's CIF email. The record is thus silent as to who at RAND made Abramson aware of the CIF email that Abramson acknowledges was the triggering event that caused him to re-examine CIF and determine Piquado's work there presented a conflict of interest. Under the holding of *Reeves*, this silence is fatal to RAND's motion for summary adjudication on the issue of pretext. (*Reeves*, *supra*, 121 Cal.App.4th at p. 113.)

We note there is evidence in the record that Hahm informed Piquado there were individuals at RAND who viewed her as an "agitator" because she continued to advocate for DEI policies at a time when RAND was restructuring its diversity programs. If one of those individuals forwarded Piquado's CIF email to Abramson to retaliate against her for her DEI advocacy, this would establish a discriminatory animus for RAND's ultimate decision to terminate Piquado. This is true even if Abramson's determination that CIF posed a conflict of interest was legitimate and non-pretextual. As *Reeves* explained, under this so-called "cat's paw" doctrine, an actor who acted without animus, such as Abramson, "may be found to have operated as a mere instrumentality or conduit for others who acted out of discriminatory or retaliatory animus, and whose actions were a but-for cause of the

19

challenged employment action." (*Reeves*, *supra*, 121 Cal.App.4th at p. 113.) In the absence of evidence showing that Abramson "became aware" of Piquado's November 2020 CIF emails through legitimate non-discriminatory means, we must conclude that RAND "failed to make a threshold showing that *all* material contributors to the decision acted for legitimate nondiscriminatory motives." (*Ibid*.)

We note Piquado was not required to produce direct evidence that RAND's stated reasons for investigating CIF and terminating her employment was pretextual. (See *Guz*, *supra*, 24 Cal.4th at p. 354 [the "*McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially"]; *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 591.) On the record before us, we conclude there are triable issues of material fact on the questions of pretext and the motives of all the individuals who contributed to the decision to terminate Piquado's employment. We must therefore reverse the trial court's grant of summary adjudication to RAND on Piquado's first through eighth causes of action and her claim for punitive damages.

IV.    *Adverse Employment Action*

RAND argues it is entitled to summary adjudication because Piquado has not shown she suffered an adverse employment action. There is no question that to state a prima facie case, Piquado must present evidence that she suffered an adverse employment action. (*Guz*, *supra*, 24 Cal.4th at p. 355.) An adverse employment action is one "that materially affects the terms, conditions, or privileges of employment" and "had a detrimental and substantial effect on the plaintiff's employment." (*McRae, supra,* 142

20

Cal.App.4th at p. 386; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455 [an adverse employment action is one which "result[s] in a substantial adverse change in the terms and conditions of the plaintiff's employment"].)

Here, Piquado argues that RAND's decision to force her to choose between CIF and RAND was an adverse employment action motivated, at least in part, by discriminatory and retaliatory animus. By failing to carry its threshold burden under *Reeves*, RAND has not established this ultimatum was legitimately imposed upon Piquado. RAND acknowledges that Piquado's work at CIF was more lucrative than her work at RAND. From this we conclude that RAND's ultimatum, coming after two years of Piquado's simultaneous employment by both entities with RAND's knowledge and approval, had a detrimental and substantial effect on the privileges of Piquado's employment at RAND. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1054 ["the phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide"].)

There is also no question that RAND terminated Piquado when she refused to choose between RAND and CIF. Termination is an adverse employment action. (*Guz, supra*, 24 Cal.4th at p. 355.) At a minimum, on this record, we find there are triable issues of material fact regarding whether Piquado suffered an adverse employment action.

V.     *Negligent Infliction of Emotional Distress*

21

The trial court granted summary adjudication to RAND on Piquado's ninth cause of action for negligent infliction of emotional distress on the basis that Piquado did not address that cause of action in her opposition to RAND's summary adjudication motion. Piquado does not address this cause of action in her appeal either. Piquado bears the burden on appeal of establishing error by the trial court. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708 ["on appeal, the trial court's judgment is presumed correct, and the burden is on the Appellants to demonstrate reversible error. . . . This is true even on de novo review"]; accord *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) By failing to address her ninth cause of action, Piquado impliedly concedes the trial court's ruling was correct on that point. (*Bouzas, supra,* 53 Cal.3d at p. 480 [argument is conceded by failure to address it on appeal]; *Westside, supra,* 42 Cal.App.4th at p. 529 [appellants "effectively concede" issue by failing to address it in brief].)

The trial court's grant of summary adjudication on Piquado's ninth cause of action is affirmed.

## DISPOSITION

The order granting summary adjudication to RAND is reversed as to Piquado's first through eighth causes of action and Piquado's claim for punitive damages, and is affirmed as to her ninth cause of action. Piquado is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, P. J.

WE CONCUR:

COLLINS, J.                          GARCIA UHRIG, J.*

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22